IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LIONELL H. KLINE,** | |
| Plaintiff, | |
| v. | Case No. 14 C 6369 |
| **INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT LODGE 141, IAMAW LOCAL LODGE 1487, and ERIK STENBERG,** | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lionell Kline ("Kline"), filed suit in Illinois state court alleging that his union misrepresented him in various proceedings, leading to his termination as a lead ramp serviceman for United Airlines. Defendants (two local branches of the International Association of Machinists and Aerospace Workers, and union officer Erik Stenberg, whom the Court refers to collectively as "the Union") removed the case to this Court based on federal-question jurisdiction. *See,* 29 U.S.C. § 185(a) (allowing claims in federal court for certain disputes between a union and its members); *see also, Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968). The Union has moved for summary judgment [ECF No. 39]. For the reasons stated herein, the Court grants the Motion.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. Kline was an employee of United Airlines ("United") for 25 years. During the events underlying this suit, he worked as a lead ramp serviceman, which the Union considers a non-managerial position. His duties entailed servicing United planes while they sat on the "airport apron" (the area directly outside the gates where the planes park before takeoff and after landing).

On January 12, 2013, Kline claims he was twice shoved by Daniel Loner ("Loner"), another United employee, while working outside Gate B9 at O'Hare International Airport. He claims that Loner shoved him suddenly and from behind, "unprovoked and for no apparent reason." (Pl. Ex. 1, at ¶ 4, ECF No. 66.) Four days later, on January 16, Kline reported the incident to his United supervisor, and United subsequently opened an investigation. The Union also assigned Kline a union official to represent him in the proceedings.

Kline has consistently characterized Loner's actions as an assault, a battery, or both. He does not claim Loner punched or kicked him. (Def. Ex. A, at 13, ECF No. 41.) He also did not fall down as a result of being shoved. (*Id*.) He finished his shift on the day of the incident and returned to work the following day. (*Id*. at 16-17.) He claims, however, that the shoves aggravated a preexisting shoulder injury. (*Id*. at 14.)

Consequently, he went to see a doctor on January 16, the same day he reported the incident. For reasons unknown, Kline did not tell the doctor about the assault. (Def. Ex. A at 22 and Def. Ex. N.)

On January 20 – eight days after the shoving incident – Kline filed a police report. The report indicates a claim of battery against Loner and describes the date the battery occurred as January 14 rather than January 12. Police arrested Loner while he was on the job at O'Hare; the criminal complaint subsequently was dismissed, as best Kline can remember, "for lack of evidence," although the record does not indicate definitively what became of it. (Def. Ex. A at 28.)

United interviewed Kline on January 29 and had him fill out an injury report. Like the police report, the injury report indicated that the assault occurred on January 14 rather than January 12. (Def. Ex. A at 28-29.) At some point, Kline met with the parties conducting the investigation, and together they viewed surveillance footage of the area outside Gate B9 from January 14. Kline admits that the footage from that day did not show an assault. (Def. Ex. A at 31-32.) On or about January 31, Kline changed his story; at his deposition, he admitted, "The assault took place I said initially on January 14[,] then I changed it to January 13." (Kline Dep. Def. Ex. A. at 33.)

The investigation continued. In April 2013, Kline had another meeting with United and was again represented by the Union. Following that meeting, on May 6, United announced that it was recommending Kline's discharge for violation of the company's guidelines of professional conduct. Specifically, United found that Kline had falsely accused a co-worker (Loner) of assault, had faked his injury, and generally had lied to the investigators. (Def. Ex. I.) Kline's next recourse was an "investigative review hearing," which is a hearing required prior to an employee's termination under the terms of the Union's collective bargaining agreement. (Def. Ex. C at 30.)

At some point during this time – it is unclear exactly when – Kline changed his story again to allege that the assault took place on January 12 rather than January 13. Kline disputes the contention that he ever "changed his story," but that is an undeniably accurate description; what the parties really disagree about is not *if* his story changed but *why*. Regardless, Kline discussed his case with the Union in preparation for his investigative review hearing, and the Union represented him at that hearing on May 30. (Def. Ex. A. at 38-41.) After the hearing, United issued a decision upholding Kline's termination. (Def. Ex. J.)

The next step afforded to Kline under the Union's collective bargaining agreement was a "third-step appeal."

Again, the Union represented Kline in the process, this time through union official Erik Stenberg ("Stenberg"). (Def. Ex. A. at 44.) The appeal occurred on November 26, and Kline lost. (Def. Ex. K.) The Union, through Stenberg, sent Kline a letter on January 22, 2014, which read in pertinent part:

> The Company denied your Third Step Appeal which I received on January 14, 2014. I have already discussed and emailed the Third Step Decision to you on January 15, 2014. I carefully reviewed your case . . . for appeal to the final step of the grievance process. I also talked to other Union District Officers about your case. After we examined the specific facts in your case, the Collective Bargaining Agreement and past System Board Cases, the Union determined that further appeal would not be successful at the System Board of Adjustment. Your case is now closed. Please call me if you have any questions about your case . . . Good luck in your future endeavors.

(Def. Ex. L.)

In effect, this letter notified Kline that the Union would not represent him in a "step-four" appeal that would have entailed arbitration of the dispute. Kline filed this lawsuit, alleging that the Union breached its duty of fair representation throughout the investigation and in failing to pursue another appeal.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine

- 5 -

dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court does not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255).

### III. <u>ANALYSIS</u>

Kline believes the Union should have advocated on his behalf more strenuously; whether a reasonable jury could determine that the Union failed to meet its obligations under the law in this regard is the only issue before the Court.

Unions have a statutory duty to represent fairly their members, a duty that "was developed over 20 years [prior to 1967] in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act . . . and was soon extended to unions certified under the [National Labor Relations Act]." *Vaca v. Sipes,* 386 U.S. 171, 190 (1967) (citations omitted). A union breaches the duty of fair representation "only when [the] union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190 (citing *Humphrey v. Moore,* 375 U.S. 335 (1964)).

There is no serious argument that can be made in this case that the Union's conduct toward Kline was nondiscriminatory. Kline aims for such an argument, but misses; twice in his response to the Union's motion, Kline points out that he is African-American and that Loner is white. This alone is meant to "suggest the unfair representation was animated by racial discrimination against Mr. Kline on the part of the Union." (Pl.'s Resp. at 13.) That's not enough. The record contains no evidence from which the Court could infer motivation based on any racial factor. Indeed, Kline has emphasized throughout this case that he has no idea why Loner shoved him – he never raised the possibility of racial hostility. The accusation likewise was not raised in his initial Complaint. That Kline would allege racial discrimination now, without any supporting evidence whatsoever, smacks of opportunism.

There is also no evidence that the Union acted in bad faith. Kline does not point to any motive on the part of the Union (other than the previously discussed implication of racism) that would suggest dishonesty in its representation. For example, in *Ooley v. Schwitzer,* there was evidence that a union official believed the plaintiff's claim had merit, but that the union abstained from another appeal for strategic reasons. *See, Ooley v. Schwitzer Div., Household Mfg.,* 961 F.2d 1293, 1303 (7th Cir. 1992). The Seventh Circuit noted that this

evidence could be enough to establish a bad-faith motive on the part of the union. *See, id*. at 1303-04. The record in this case shows only that the Union represented Kline at all points during the investigation, until it thought further appeal would be fruitless; when it reached that point, it sent Kline a letter explaining its decision and obviously believed the case was weak. Kline has not offered evidence that the Union had an ulterior motive.

Because there is no evidence of discriminatory intent or bad faith, Kline's last hope is to show that the Union's behavior was arbitrary. To do this, Kline must allege facts showing that the Union's actions were "so far outside a wide range of reasonableness that the actions rise to the level of irrational or arbitrary conduct. Under this extremely deferential standard, courts should not substitute their judgment for that of the union, even if . . . it appears that the union could have made a better call." *Ooley,* 961 F.2d at 1302; *see also, Trnka v. Local Union No. 688,* 30 F.3d 60, 61-62 (7th Cir. 1994).

Kline points to several alleged deficiencies in the Union's representation as evidence of arbitrary conduct. First, he claims the Union failed to search for other surveillance footage outside of Gate B9 and failed to undertake a forensic analysis of the existing footage to ensure absence of tampering. Hours

of surveillance footage are part of the record in this case. The parties had to review quite a bit of it, because Kline recalled the wrong date, twice, before settling on January 12. After reviewing the footage from January 12, Kline believes that he pinpointed one of the two shoves: he captured a screenshot of the moment from 8:09 a.m. on January 12, ostensibly showing Loner's arm, outstretched, in the direction of Kline, who is obscured behind a pole. That is the only video evidence Kline could marshal. He speculates that other cameras may have shown more, but he offers no specific proof of the existence of other cameras with better vantage points. And why should the Union have suspected tampering? If an airline employee is assaulted on the airport apron by a co-worker, that is a serious security incident; it stands to reason that the responsible airline would want to do everything in its power to catch the offender. The Union was not required to presume a conspiracy by United to protect Loner by wiping surveillance footage.

Kline next argues that the Union acted arbitrarily in various ways at his hearings, including by failing to call more eye-witnesses, failing to introduce more exhibits, not demanding a detailed written statement from Loner or calling him at the hearings, and not investigating why one particular eye-witness recanted. In each instance, Kline fails to convey specifically what each piece of additional evidence would show or how it

would have changed the outcome of the investigation. *See, Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1176-77 (7th Cir. 1995) (holding that a union's failure to present favorable evidence breaches the duty of fair representation only if the evidence probably would have brought about a different decision). For example, Kline claims the crew aboard the aircraft at Gate B9 should have been called to testify, but he offers no evidence that the crew saw anything relating to the assault. Moreover, United's written opinions from the hearings reveal that the Union mounted a sincere defense, introducing several exhibits and highlighting the lone eye-witness's account. (Def. Exs. J and K.) That witness initially said she saw Loner shove Kline and then later recanted. She testified at one or both of the hearings, and the Union argued explicitly that she changed her story because she wanted to keep her job. Perhaps the Union could have pressed her further, but it is not the Court's job to micromanage the Union's investigatory strategy. *See, Ooley,* 961 F.2d at 1302.

Kline's final argument is that the Union acted arbitrarily in failing to pursue the fourth-step appeal. Article XVIII of the collective bargaining agreement covers grievance procedures. (Def. Ex. C at 30.) The agreement describes the procedures for each step separately, and its wording suggests that the step-two and step-three appeals are mandatory. But the step-four appeal

is discretionary, providing that the Union "may request" it if the grievance remains unsettled. The question is whether the Union arbitrarily exercised its discretion in deciding not to pursue the fourth-step appeal. In answering that question, the Court emphasizes that it is not important whether Kline's story of the assault is actually true; what is important is whether the undisputed facts show that the Union had a reasonable basis to believe Kline's case was so weak that it did not warrant further time and effort. And here, the Union's basis for its belief was exceedingly strong: Kline got the date of the assault wrong four days after it supposedly occurred; he flubbed the date again some time later; the hours of surveillance footage did very little (if anything) to bolster his story; his lone eye-witness recanted; and he failed to connect his injury to the assault when visiting the doctor.

In short, because the undisputed facts fail to show that the Union acted arbitrarily, discriminatorily or in bad faith in representing Kline, the Union fulfilled its duty of fair representation as a matter of law. The Court pauses briefly to address some scattershot arguments made in Kline's response to the Union's motion for summary judgment regarding various payments owed to him after his termination. To substantiate these allegations, Kline attached various documents to his response that were not produced in discovery in violation of

Federal Rule of Civil Procedure 26(a). The production of these documents well after discovery unfairly prejudices the Union. Moreover, it is unclear how the Union would owe payments to Kline rather than United Airlines, who is not a party to this case. Regardless, the Court dismisses the payment claims for lack of evidence, because a party who fails to provide required information under Rule 26(a) is not allowed to use that information later "to supply evidence on a motion, at a hearing, or at a trial. . . ." FED. R. CIV. P. 37(c)(1); *see also, Mannoia v. Farrow,* 476 F.3d 453, 456-57 (7th Cir. 2007).

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 39] is granted. The case is dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 2/23/2016

- 12 -